# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON CONTRERAS, CDCR #V-99014, <br><br> Plaintiff, <br><br> v. <br><br> RALPH DIAZ; PATRICK COVELLO; K. COTTRELL; C. ROCHA; V. CORTES; H. CRUZ; M. SEAMAN; PLASCENCIA, <br><br> Defendants. | Case No.: 19-cv-02108-BAS-WVG <br><br> **ORDER:** <br><br> 1) **GRANTING MOTION TO PROCEED** *IN FORMA PAUPERIS* **[ECF No. 2];** <br><br> **AND** <br><br> 2) **DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2), 1915A(b) WITH LEAVE TO AMEND [ECF No. 1]** |

On November 1, 2019, Plaintiff Ramon Contreras, currently incarcerated at Corcoran State Prison located in Corcoran, California and proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (*See* Compl., ECF No. 1). Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when he filed his Complaint; instead, he filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (Mot. to Proceed IFP, ECF No. 2). For the reasons below, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and **DISMISSES** the Complaint with leave to amend.

1

## I. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments." *Bruce v. Samuels*, -- U.S. --, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015). Prisoners must pay the entire fee regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, courts assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

As required by Local Civil Rule 3.2, Plaintiff has submitted a copy of his CDCR Inmate Statement Report. (*See* Mot. to Proceed IFP at 4.) This statement shows that

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

Plaintiff's available balance is insufficient to impose an initial partial filing fee at the time of filing. Therefore, the Court will not direct the Secretary of the CDCR, or his designee, to collect an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). However, the balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure

3

12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Factual Allegations

In 2018, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD"). (*See* Compl. at 1.) On July 13, 2018, RJD correctional officers "conducted a full search of the housing unit Plaintiff was housed in." (*Id.* at 14.) Correctional Officer Rocha claimed that he "discovered a controlled substance within Plaintiff's personal property." (*Id.*) Although Plaintiff was housed with another inmate, he was "the only inmate charged and placed in [administrative segregation] for the discovery of the controlled substance." (*Id.*) Lieutenant Cottrell "was the superior officer overseeing the searches and determining which inmates would be placed" in administrative segregation. (*Id.*)

Following a disciplinary hearing, Plaintiff was "ultimately exonerated of the charges" and it was "determined that the Plaintiff's cellmate should have also been placed into [administrative segregation] until a final determination of investigation was completed." (*Id.* at 15.)

Plaintiff alleges the reason Rocha "lied about where and in whose property he discovered the controlled substance is because he did not want to deal with placing Plaintiff's cellmate [] into [administrative segregation] because he is hearing impaired." (*Id.*)

During a September 6, 2018 "committee hearing," Plaintiff agreed to accept the "results of the field test that was conducted on the controlled substance in order to proceed with the truth finding process." (*Id.* at 15–16.) Plaintiff claims he was assured by Warden Covello and "committee members" that the test "could not be used as evidence to find him guilty at his [Rule Violation Report ("RVR")] hearing." (*Id.* at 16.)

On September 20, 2018, Covello again "reassured" Plaintiff that the field test he agreed to would "not be used against him" and Covello would "follow Plaintiff's case in order to make sure the proper procedure would be followed." (*Id.*)

On October 11, 2018, "Plaintiff went before Lieutenant V. Cortes for his RVR hearing." (*Id.*) Plaintiff "presented his case establishing his innocence." (*Id.*) Cortes "found the Plaintiff guilty on the ground that he accepted 'ownership' of the controlled substance" when he signed the chrono agreeing to take the field test. (*Id.*) Plaintiff informed Cortes that Corvello "and other committee members had guaranteed" that this chrono would not be used as evidence against him. (*Id.*) Cortes responded by stating "that if the warden was conducting the hearing he would probably find Plaintiff not guilty, but since he was the hearing officer, he was finding Plaintiff guilty." (*Id.*)

Associate Warden and Chief Disciplinary Officer J. Juarez "failed to find that the decision taken by [Cortes] as improper" and "affirmed" the disciplinary decision by Cortes." (*Id.*) Plaintiff filed an appeal of this decision. (*See id.*) Plaintiff's father also "sent letters to the Officer of Internal Affairs" and the "Office of the Ombudsman" when he learned of the guilty finding. (*Id.*)

Plaintiff claims "two representatives" of the "Office of the Ombudsman" were present at his December 6, 2018 committee hearing. (*Id.* at 17.) During the hearing, Plaintiff explained that he was only found guilty based on the signing of a chrono that he had been "told by Warden Covello and other committee members . . . could not be used as evidence to find him guilty." (*Id.*) Juarez "acknowledged that he made an error affirming" Cortez's "guilty finding" and "ordered the release of the Plaintiff" from administrative segregation. (*Id.*) Juarez also "ordered the RVR re-issued and reheard on the ground that

5

a due process violation occurred." (*Id.*)  As a result of the guilty finding, Plaintiff "spent unjustly approximately five months" in administrative segregation.  (*Id.*)

While in administrative segregation, Plaintiff was "not allowed to have his personal property/appliances," was only given one pair of "boxers," "socks, a jumpsuit, and linen." (*Id.*)  In addition, every time Plaintiff left his cell he was placed "in handcuffs."  (*Id.*) Plaintiff was not permitted contact visits and only "allowed a maximum of 10 hours of outside recreation per week." (*Id.* at 17–18.)  Plaintiff claims that these "conditions were a dramatic change to the living conditions Plaintiff was under before being placed in [administrative segregation] on false allegations." (*Id*. at 18.)

Plaintiff claims that "as a result of the erroneous guilty finding, Plaintiff had his visiting privileges suspended for 6 months." (*Id.* at 19.)  Plaintiff further claims that "the fact that it took officials" months to "reinstate Plaintiff's visiting privileges indicates that reprisals were taken against the Plaintiff." (*Id.*)

On January 10, 2019, Plaintiff "had the hearing for the re-issued RVR and he was found not guilty." (*Id.*)  Plaintiff alleges that the "Disciplinary Hearing Results states that the reason(s) the Plaintiff was found not guilty was because the reporting [Rocha] provided [contained] inconsistent reports and statements." (*Id.* at 20.)

"After a few days of being released" from administrative segregation, Plaintiff "noticed the first retaliatory action taken against him by officers at RJD" when his television was returned from storage and it was "broken." (*Id.*)  Plaintiff's parents "purchased him a new TV but when he went to pick it up, [Correctional Officer] Plascencia refused to give him the new TV." (*Id.*)

Plaintiff also alleges Sergeant Cruz retaliated against him on June 16, 2019 by denying Plaintiff the opportunity to have a visitation with his parents.  (*See id.* at 21.) Plaintiff claims Cruz informed his parents that "they would not be able to see Plaintiff because there was a shortage of staff in [administrative segregation] so no transportation was available." (*Id.*)  Plaintiff also claims he was subject to retaliatory actions by Correctional Officer Seaman, administrative segregation property officer, because he was

6

the "last inmate to receive his allowable property out of the 25 plus inmates" who had submitted a "group grievance." (*Id.*)

Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages. (*Id.* at 28–29.)

### C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D. Fourteenth Amendment Due Process Claims

Insofar as Plaintiff challenges the validity of the disciplinary proceedings on grounds that Defendants violated his right to procedural due process, he fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

7

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486–87). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Id.* at 860.

As an initial matter, the Court finds that Plaintiff's Complaint has alleged facts which show that any disciplinary punishment he faced as a result of the disciplinary hearing subjected him to a "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 584.

However, even though Plaintiff has alleged facts sufficient to invoke a protected liberty interest under *Sandin*, he fails to plead factual content to show he was denied the procedural protections the Due Process Clause requires. *See Ramirez,* 334 F.3d at 860 ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process."). Those procedures include: (1) written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974). Plaintiff does *not* allege that he was denied any of the procedural safeguards required by *Wolff*.

Therefore, the Court finds that Plaintiff fails to state a Fourteenth Amendment due process claim upon which relief may be granted.

### E. Eighth Amendment Claims

Plaintiff claims that "as a result of the due process violations, the Plaintiff had to spend time in bad living conditions in violation of his Eighth Amendment rights." (Compl. at 24.)

"After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319

(1986)) (internal quotations omitted). "[A]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted).

To state cruel and unusual punishment claim, Plaintiff must allege facts sufficient to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S. at 678. First, he must allege his deprivation was "objectively [and] 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298–300; *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (citation omitted).

Second, Plaintiff's Complaint "must contain sufficient factual matter" to demonstrate that each Defendant acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Iqbal*, 556 U.S. at 678. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Plaintiff invokes the Eighth Amendment with respect to the purported falsification of his RVR and the disciplinary punishment imposed as a result of having been found guilty of possessing a controlled substance in his cell. But a mere change to his classification status is not a "basic human need," and does not plausibly deprive him of "life's necessities." *See Chapman*, 452 U.S. at 347.

Moreover, Plaintiff claims that the purported violation of his Eighth Amendment rights caused him "emotional and psychological distress." (Compl. at 18.) Plaintiff cannot recover monetary damages for a "mental or emotional injury" without a "prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

9

For these reasons, Plaintiff has failed to state an Eighth Amendment conditions of confinement claim upon which relief may be granted.

### F. First Amendment Retaliation Claim

Plaintiff alleges, with very little specific factual support, that various correctional officers retaliated against him. Plaintiff alleges unnamed RJD correctional officers caused his television to be broken. (*See* Compl. at 20.) Plaintiff alleges that Correctional Officer Plascencia "refused to give him" a new television that had been purchased by his parents. (*Id.*) Plaintiff also claims that he was denied a visitation by his parents on one occasion because Sergeant Cruz informed them that there "was a shortage of staff in [administrative segregation] so no transportation was available." (Compl. at 21.) Finally, Plaintiff claims that of a group of inmates, he was the "last inmate to receive his allowable property" following a group grievance. (*Id.*)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison*, 668 F.3d at 1114.[2] Second, Plaintiff must allege Defendants took adverse action against him.[3] *Rhodes*, 408 F.3d at 567. Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[4] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from

---

[2] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[3] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270.

[4] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[5] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

While Plaintiff's allegations are sufficient to satisfy the first two elements of a retaliation claim, he fails to allege any facts to plausibly satisfy the remaining elements. For example, Plaintiff does not allege that any of the named Defendants were aware of any specific grievance or appeal Plaintiff had filed against any of them, or any other RJD correctional officers, and he offers no factual allegations tying the officers' actions with his protected conduct.[6] *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation claims requires a showing that Plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct."); *Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1271 (E.D. Cal. 2009) ("To make out a prima facie case of retaliation, the plaintiff has the burden of showing that retaliation for the exercise of a protected right was the but-for factor behind the defendant's conduct."). Moreover, Plaintiff does not allege facts to show why or to what extent Defendants' actions "would chill or silence a person of ordinary firmness from future First Amendment activities," *Robinson*, 408 F.3d at 568, and as currently pleaded, his Complaint fails to allege that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that was "more than minimal." *Robinson*, 408 F.3d at 568 n.11. Finally, Plaintiff fails to allege Defendants' "failed to advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

Therefore, the Court finds that Plaintiff has failed to state a First Amendment retaliation claim upon which relief may be granted.

---

[5] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.
[6] "[B]are speculation that a[n] [adverse action] is retaliatory is insufficient to support a claim for relief." *Patton v. Flores*, No. 3:19-CV-00659-WQH-LL, 2019 WL 4277412, at *6 (S.D. Cal. Sept. 9, 2019) (citing *McCollum v. CDCR,* 647 F.3d 870, 882-83 (9th Cir. 2011)).

11

### G. Leave to Amend

Accordingly, the Court finds Plaintiff's Complaint fails to state a plausible claim against any named Defendant, and that therefore, it is subject to *sua sponte* dismissal in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

Because he is proceeding *pro se*, however, the Court having now provided him with "notice of the deficiencies in his complaint," will also grant Plaintiff an opportunity to amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

## III. CONCLUSION AND ORDER

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to garnish the $350 filing fee owed in this case by collecting monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding them to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). **All payments must be clearly identified by the name and number assigned to this action.**

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him **forty-five (45) days leave from the date of this Order** in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be

considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

5. The Clerk of Court is directed to mail Plaintiff a court approved civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: January 13, 2020**

Hon. Cynthia Bashant
United States District Judge