# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON CONTRERAS, CDCR #V-99014,<br><br>Plaintiff,<br><br>v.<br><br>RALPH DIAZ; PATRICK COVELLO; K. COTTRELL; C. ROCHA; V. CORTES; H. CRUZ; M. SEAMAN; PLASCENCIA; J. JUAREZ,<br><br>Defendants. | Case No.: 19-cv-02108-BAS-WVG<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL [ECF No. 9];**<br><br>**AND**<br><br>**(2) DISMISSING SECOND AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM** |

Before the Court are Plaintiff Ramon Contreras' Second Amended Complaint ("SAC") and Motion to Appoint Counsel. (SAC, ECF No. 7; Mot. to Appoint Counsel, ECF No. 9.) For the reasons stated below, the Court **DENIES** Plaintiff's Motion and **DISMISSES** the SAC without leave to amend.

**I.  PROCEDURAL HISTORY**

On November 1, 2019, Ramon Contreras ("Plaintiff"), currently incarcerated at Ironwood State Prison ("ISP") located in Blythe, California, and proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Compl.") against officials at the California Department of Corrections and Rehabilitation ("CDCR"), along with prison officials at the Richard J. Donovan ("RJD") in San Diego, California. (Compl., ECF No. 1.) Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) when he

- 1 -

1   filed his Complaint; instead, he filed a Motion to Proceed *In Forma Pauperis* ("IFP")
2   pursuant to 28 U.S.C. § 1915(a).  (ECF No. 2.)

3   On January 13, 2020, the Court granted Plaintiff's Motion to Proceed IFP and
4   simultaneously dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C.
5   § 1915(e)(2) and § 1915A(b).  (ECF No. 3.)  Plaintiff was granted leave to file an amended
6   pleading to correct the deficiencies identified in the Court's Order.  (*Id.* at 12–13.)  Plaintiff
7   was cautioned that Defendants not named and any claim not re-alleged in his Amended
8   Complaint would be considered waived.  (*See id.* (citing S.D. Cal. CivLR 15.1; *Hal Roach
9   Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n
10  amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928
11  (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged
12  in an amended pleading may be "considered waived if not repled.").)

13  On January 27, 2020, Plaintiff filed a First Amended Complaint ("FAC").  (*See* ECF
14  No. 4.)  The Court again conducted the required *sua sponte* screening and found that he
15  again failed to state a claim upon which relief could be granted.  (ECF No. 6 at 11.)
16  Additionally, because Plaintiff no longer named Cruz, Seaman, and Plascencia as
17  Defendants in his FAC, the claims against these Defendants were deemed waived and those
18  Defendants were dismissed from this action.  (*Id.* at 2 (citing *Lacey*, 693 F.3d at 928).)

19  Plaintiff was granted leave to file an amended pleading and, on April 29, 2020,
20  Plaintiff filed his Second Amended Complaint ("SAC").  (ECF No. 7.)  Plaintiff has also
21  filed a Motion to Appoint Counsel.  (ECF No. 9.)

22  **II.   MOTION TO APPOINT COUNSEL**

23  Plaintiff seeks appointment of counsel on the grounds that he is indigent and lacks
24  legal training, and because this is a "factually complex case."  (*See* Mot. to Appoint
25  Counsel at 1–2.)

26  All documents filed *pro se* are liberally construed, and "a *pro se* complaint, however
27  inartfully pleaded, must be held to less stringent standards than formal pleadings drafted
28  by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429

- 2 -

U.S. 97, 106 (1976) (internal quotations omitted)). But there is no constitutional right to counsel in a civil case and Plaintiff's SAC does not demand that the Court exercise its limited discretion to request than an attorney represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1) at this stage of the case. *See Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981). Only "exceptional circumstances" support such a discretionary appointment. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and a demonstrated inability of the *pro se* litigant to articulate his claims in light of their legal complexity. *Terrell*, 935 F.2d at 1017.

As currently pleaded, Plaintiff's SAC demonstrates that while he may not be formally trained in law, he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims, which are typical and not legally "complex." *Agyeman*, 390 F.3d at 1103. Moreover, for the reasons discussed below, Plaintiff has not shown that he is likely to succeed on the merits of the claims.

Therefore, the Court **DENIES** Plaintiff's Motion to Appoint Counsel. (ECF No. 9.)

### III. SCREENING OF SAC

#### A. Standard of Review

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his SAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. <u>Plaintiff's Allegations</u>

On July 13, 2018, Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD"). (*See* SAC at 4.) A "full search of the housing unit [where] Plaintiff was housed in was conducted." (*Id.*) Plaintiff's cell was searched and Defendant Rocha "falsely claimed that Plaintiff had within his personal property a controlled substance." (*Id.* at 4–5.) Plaintiff alleges Rocha "filed a false incidence and Rules Violation Report (RVR)." (*Id.* at 5.) As a result, Plaintiff claims he "spent unjustly approximately 5 months in Administrative Segregation Unit (ASU)." (*Id.*)

Plaintiff claims Rocha "failed to act as an impartial officer because he did not charge and place Plaintiff's cell-mate into ASU" in violation of CDCR policy. (*Id.*) On January 10, 2019, Plaintiff was "ultimately exonerated and the RVR was dismissed when he went for a rehearing on the RVR charge." (*Id.*) Plaintiff claims that the "disciplinary hearing

results" from the January 1, 2019 rehearing is the "basis of the present complaint because they establish that Defendant Rocha lied, Defendant Cortes was not an impartial fact-finder, and the first disciplinary hearing results were dismissed because of a due process violation." (*Id.*)

Rocha "claimed he was the first and only officer to search Plaintiff's cell." (*Id.*) However, Plaintiff alleges that this claim was "proven to be false because the cell-search worksheet that was issued shows that the cell had been searched by another officer an hour prior to Defendant Rocha's search of the cell." (*Id.*)

Plaintiff claims Rocha issued a false report on July 13, 2018 following the cell search and Plaintiff "was handcuffed and placed inside a cage for several hours." (*Id.* at 5–6.) Defendant Cottrell, the "superior officer overseeing the search[,]" informed Plaintiff as to "why he was going to be placed in ASU." (*Id.* at 6.) Plaintiff told Cottrell that he "did not have a controlled substance in his property and that he had no knowledge of any controlled substance being inside the cell he occupied." (*Id.*)

Plaintiff claims that by placing only him and not also his cellmate in the ASU, Rocha and Cottrell "were not acting as impartial officers." (*Id.*) Plaintiff alleges that contraband was found in other cells during the same cell search and in those instances both cellmates were placed in the ASU. (*See id.*) Plaintiff claims CDCR policy "requires that when contraband is discovered in a cell occupied by two inmates and none of the inmates takes responsibility for the contraband, both inmates are to be charged and placed in ASU." (*Id.*)

Plaintiff claims that Rocha "lied about where and whose property he discovered the controlled substance because he did not want to deal with placing Plaintiff's cellmate" into the ASU because his cellmate was "hearing impaired." (*Id.* at 6–7.) Plaintiff alleges placing a hearing-impaired inmate in the ASU requires officers to "follow a more time-consuming procedure." (*Id.* at 7.) Rocha "did not want to deal with the extra work so he lied." (*Id.*)

While Plaintiff was housed in the ASU, he "maintained his innocence." (*Id.*) On September 6, 2018 he "agreed to sign a 128B NIK chrono accepting the results of the field

- 5 -

test that was conducted on the contraband in order to proceed with the truth finding process." (*Id.*) Plaintiff only agreed to sign this chrono because Defendant Covello "and other committee members informed/guaranteed Plaintiff that it could not be used as evidence to find him guilty at his RVR hearing." (*Id.*)

Plaintiff had another committee hearing on September 20, 2018 and he was "reassured" by Covello that the chrono "could not be used against him." (*Id.*) Plaintiff was also told by Covello that he would "follow Plaintiff's case in order to make sure proper procedure would be followed." (*Id.*)

On October 11, 2018, Plaintiff went to his disciplinary hearing where Cortes was the Senior Hearing Officer. (*See id.*) Cortes found Plaintiff "guilty on the ground that he accepted 'ownership' of the controlled substance when he signed the 128B NIK chrono." (*Id.*) Plaintiff "explained to Defendant Cortes that Defendant Covello and other committee members had guaranteed that the 128B NIK chrono could not be used to find him guilty." (*Id.* at 7–8.) Cortes told Plaintiff that if Covello was conducting the hearing he would "probably find Plaintiff not guilty" but since Cortes was the hearing officer, "he was finding Plaintiff guilty." (*Id* at 8.)

Plaintiff claims Cortes was "not an impartial fact-finder" as his "unwillingness to follow CDCR policy shows that he went into the RVR hearing with a pre-determined mind to find Plaintiff guilty." (*Id.*) Cortes denied Plaintiff's request to have Rocha as a witness so he "could question him regarding the statements he made." (*Id.*) Plaintiff also requested that his cellmate be called as a witness because his cellmate was "taking responsibility for the contraband." (*Id.*) Cortes "refused to accept" a written statement that Plaintiff had prepared. (*Id.*) Plaintiff claims "Cortes's decision to find Plaintiff guilty was arbitrary because it was based on evidence he knew was inadmissible." (*Id.*)

Plaintiff submitted administrative grievances to Covello and Juarez "explaining what happened at the RVR hearing and requesting for them to step in and correct the arbitrary guilty filing." (*Id.*) "However, neither Defendant responded." (*Id.* at 9.) Plaintiff

claims Juarez "was not an impartial fact-finder because he affirmed Defendant Cortes's arbitrary guilty finding on October 28, 2018." (*Id.*)

Plaintiff's father contacted the Office of the Ombudsmen and "two representatives showed up for a December 6, 2018 committee hearing held for Plaintiff." (*Id.*) Plaintiff told the committee members, one of whom was Juarez, that the "only reason he had been found guilty of the RVR" was due to the chrono he had signed. (*Id.*) "Juarez acknowledged that he made an error by affirming Defendant Cortes's guilty finding." (*Id.*) Juarez "released Plaintiff from the ASU and ordered the RVR re-issued and reheard on the ground that a due process violation occurred." (*Id.*)

On July 26, 2018, thirteen days after Plaintiff was initially placed in the ASU, he alleges he was interviewed by a "Mr. Tim Buzzbe from the Governor's Office" for a "commutation hearing." (*Id.* at 11.) Plaintiff claims Buzzbe told him that "his ASU placement along with the pending RVR did not look good." (*Id.*) He further informed Plaintiff that "he would not be submitting a summary report to the Governor's Office for consideration of the commutation petition if the Plaintiff was ultimately found guilty of the RVR." (*Id.*)

Plaintiff was "exonerated on January 10, 2019." (*Id.*) Plaintiff claims that the second disciplinary hearing resulting in a "not guilty" ruling was based on a finding that Rocha "provided inconsistent reports and statements, i.e. he lied." (*Id.* at 12.)

C.  **Due Process Claim Under the Fourteenth Amendment**

Plaintiff claims that Defendants violated his right to due process under the Fourteenth Amendment during his first disciplinary hearing. (*See* SAC at 13.) The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

interest by the government; [and] (3) lack of process.'"  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Plaintiff alleges that his due process rights were violated during his first disciplinary hearing based on Rocha's purported false statements.  (*See id.* at 5.)  In addition, Plaintiff claims that Cortes was not "an impartial fact-finder" as his "unwillingness to follow CDCR policy shows that he went into the RVR hearing with a pre-determined mind to find Plaintiff guilty."  (*Id.*)

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation.  *See Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)).  "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken."  *Id.*

Even if Plaintiff is able to demonstrate that he was deprived of due process by Defendants' purported failure to provide *Wolff* protections during his first disciplinary hearing, Plaintiff's own allegations demonstrate that the RVR was re-issued and reheard which resulted in a reversal of the previous guilty finding.  (*See* SAC at 12.)  Therefore, Plaintiff's claims of due process violations arising from his first disciplinary hearing are moot in light of the grant of a new hearing which resulted in a not guilty verdict.  *See Brown v. Marshall*, No. CIV S-07-0956 MCE DAD P, 2012 WL 12906131, *9 (E.D. Cal. Mar. 1, 2012) ("[P]laintiff's procedural due process claims related to either his first or second disciplinary proceedings have been rendered moot by the subsequent re-issuing and re-hearing of the rules violation charge against him."); (*Shotwell v. Brandt*, No. C 10–5232 CW (PR), 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012) (finding that "the remedy for an unfair hearing is another hearing" and "due process was satisfied when the results of the first disciplinary hearing were vacated, [and] the RVR was ordered reissued and reheard.") (citing *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991)).

Plaintiff does not allege that he suffered any loss of credits or that his sentence was extended as a result of the first disciplinary hearing. *See Randolph v. Sandoval*, No. 1:18-cv-00968-LJO-BAM (PC), 2019 WL 2410469, *7 (E.D. Cal. June 7, 2019) (finding no due process violation where "disciplinary proceedings were rendered moot by the subsequent not guilty finding" and the plaintiff did not lose credits, serve "additional time in segregation," or maintain a "disciplinary record for the alleged offenses after the RVRs were overturned."); *see also Horne v. Coughlin*, 155 F.3d 26, 31, n. 3 (2nd Cir. 1998) (finding the plaintiff's due process claims with regard to his first hearing were rendered null after the findings and penalties were vacated and a new hearing ordered and plaintiff suffered no loss of good time credits); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (finding no injury after a due process violation in the plaintiff's first disciplinary hearing was subsequently corrected in the administrative appeals process and plaintiff's sentence was adjusted so that he served no additional time in segregation.)

Here, while Plaintiff claims that his chances of receiving a commutation hearing were diminished by the guilty finding from the first disciplinary hearing, he still fails to state a claim. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska*, 442 U.S. 1, 7 (1979). The Supreme Court has found that a prisoner's desire to receive a commutation of his sentence does not constitute a liberty interest. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (holding that the "expectation that a lawfully imposed sentence will be commuted . . . is simply a unilateral hope.").

Thus, the Court finds that Plaintiff has failed to state a Fourteenth Amendment claim upon which relief may be granted.

### D. Leave to Amend

Because Plaintiff has already been provided an explanation of his pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds granting further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the

denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

## IV. CONCLUSION AND ORDERS

For the reasons explained, the Court:

1. **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 9);

2. **DISMISSES** this civil action, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), without further leave to amend for failure to state a claim upon which § 1983 relief can be granted.

3. **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and close the file.

**IT IS SO ORDERED.**

**DATED: June 9, 2020**

Hon. Cynthia Bashant
United States District Judge